## UNITED STATES ex rel. KOMLOS v. TRUDELL, Immigration Inspector.

Circuit Court of Appeals, Second Circuit. October 21, 1929.

No. 86.

Harry B. Amey, U. S. Atty., of Burlington, Vt., for appellant.

Harold Van Riper, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The alien is a merchant of Hungarian nationality, who entered the United States at the port of New York on January 29, 1926, presenting a Hungarian passport bearing an American consular nonimmigrant visa, valid for one year. Pursuant to the provisions of the Immigration Act of 1924, 43 Stat. 154, 162 (8 USCA §§ 203, 215), he was admitted as a temporary business visitor for a period of six months. Subsequently his temporary admission was extended to July 1, 1927, upon his giving bond for departure on or before that date. See Immigration Rules of March 1, 1927, rule 3, subd. H. Although a further extension was refused him, he prolonged his stay until November 25, 1927, when he left New York for Montreal, Canada.

Ever since his arrival in 1926, the alien had engaged in the importation of merchandise, chiefly from Hungary, and he had built up an importing business, which, since February, 1927, had been conducted in corporate form under the name of Kennedy & Komlos, Inc., with a place of business on West Thirty-Fourth street, in New York City. He owns a half interest in this corporation. By virtue of the treaty of friendship, commerce and consular rights between the United

States and the kingdom of Hungary, which was proclaimed October 4, 1926, the alien claims that he is entitled to remain in the United States indefinitely for the purpose of carrying on his importing business. His departure for Montreal on November, 1927, was made with the threefold purpose of (1) effecting a cancellation of the above-mentioned bond, which the immigration officials were endeavoring to forfeit; (2) transacting business with a customer in Montreal; and (3) presenting to the court, by an attempt to return to New York City, the question whether the treaty entitled him to remain in this country.

On November 29, 1927, he crossed the border on a train bound for New York City. He was detained, and examined before a board of special inquiry at Rouses Point, N. Y., and was excluded because he did not possess a Hungarian quota immigration visa. December 5, 1927, he again applied for admission at St. Albans, Vt., was examined by a board of special inquiry, and was again excluded—the reasons assigned being (1) that he did not possess an unexpired Hungarian quota immigration visa; (2) that he was not within section 3 (4) of the Immigration Act of 1924 (8 USCA § 203); and (3) that he was not within section 3 (6) of said act. The board's decision of exclusion was affirmed by the Secretary of Labor, on appeal, before entry of the order sustaining the writ of habeas corpus.

The treaty upon which the alien relies was ratified and proclaimed, subject to reservations and understandings set forth in an exchange of notes dated June 24, 1925, which stipulated " * * * that these reservations and understandings shall be in substance to the effect that there be added to article I of the treaty a statement that nothing contained therein shall be construed to affect existing statutes of either country in relation to the immigration of aliens or the right of either country to enact such statutes. * * * "

By reason of this addendum, the appellant contends, the Immigration Act of 1924 has been in no respect modified by the treaty, and hence the relator, in order to escape the necessity of presenting an immigration visa, must bring himself within one of the classes of aliens excepted from the definition of "immigrant," as defined in section 3 of the act (8 USCA § 203), which, according to the appellant's argument, he is unable to do.

Without in any sense intimating a disagreement with this argument, we find it unnecessary to pass upon it, because the record discloses an obvious justification for the alien's exclusion. He presented to the immigration authorities at St. Albans no passport duly visaed by a consular officer of the United States. He did present the Hungarian passport originally issued to him in 1926, valid, by extension by the Hungarian consul, until November 24, 1928; but the visa of the United States consul in Hungary was valid for only one year from its date, January 2, 1926. It appears from testimony before the board of special inquiry that the relator had been refused a visa by the United States consul in Montreal.

By virtue of the Act of May 22, 1918, 40 Stat. 559 (22 USCA §§ 223–226) as extended by the Act of March 2, 1921, 41 Stat. 1205, 1217 [22 USCA § 227]), the President is authorized to make passport regulations. He did so by Executive Order No. 4476 of July 12, 1926. This order prescribes that immigrants must present immigration visas and that nonimmigrants (with certain exceptions) "must present passports or official documents in the nature of passports issued by the governments of the countries to which they owe allegiance, duly visaed by consular officers of the United States." The relator claims the right to enter as a nonimmigrant alien, but does not show himself within any of the exceptions specified in the Executive Order, or in the Immigration Rules of 1927 (rule 3, subd. F, par. 2). The validity of such passport requirement and the sufficiency of noncompliance therewith as a ground for excluding nonimmigrant aliens have been sustained by us very recently. United States ex rel. London v. Phelps (C. C. A.) 22 F. (2d) 288, and United States on Petition of Albro ex rel. Graber v. Karnuth (C. C. A.) 30 F.(2d) 242. There is nothing in the treaty with Hungary which does away with the necessity of a visaed passport, even if it be assumed that the treaty gives the relator the status of a nonimmigrant alien.

Hence his exclusion by the board of special inquiry was lawful, and the order sustaining the writ of habeas corpus must be reversed. It is so ordered.