## UNITED STATES v. COLUMBUS MARINE CORPORATION et al.

### No. 137.

Circuit Court of Appeals, Second Circuit.

Jan. 16, 1933.

Loomis & Ruebush, of New York City (Homer L. Loomis, of New York City, of counsel), for appellants.

George Z. Medalie, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The action was first to recover fines of $6,000 from the defendant, Columbus Marine Corporation, and, second, upon a bond for $5,000 posted by that company and the other defendant, National Surety Company, as guarantor to secure any fines imposed. The complaint not drawn by the attorney appearing on this appeal, is so insufficient that it is difficult to ascertain what the pleader intended, but, as we dispose of the case upon the merits, we shall assume that it attempted to lay a complaint for fines against the ship's agent, the defendant, Columbus Marine Corporation, under section 20 of the Immigration Act of 1924 (8 USCA § 167) for the escape of six alien seamen; and against both defendants upon a bond to secure all fines levied against any person, under which the ships might be denied clearance. The facts were as follows: The S. S. Iris, of which the Columbus Marine Corporation was agent, arrived in the port of New York in April, 1925, with four alien seamen aboard, whom the immigration inspector directed the master to detain, but who escaped. The agent learned of the order of detention, though never served with it, and tried to detain the aliens, no doubt considering itself also charged by the order to the master. The ship left for Norfolk, and was about to clear from there on May second, when, apprehending that she might be held up, the agent, on May first, offered the Commissioner of Immigration a bond, guaranteeing any fines which might be levied, and on the next day posted the bond in suit. On May fourth, the agent received from the Commissioner a letter, addressed to itself as agent of the ship, stating that "apparently penalties had been incurred under sections 19 and 20 of the act [8 USCA §§ 166, 167]." The letter gave it thirty days "for that purpose," if it should "desire a hearing as to whether a fine should be imposed," and added that the ship might clear upon giving a deposit or posting a bond as security. On June eleventh, the collector of customs, at the direction of the Bureau of Immigration, informed the agent that a fine of four thousand dollars had been imposed, upon whom it did not say. Substantially the same course was followed in the case of another steamer, the Carnia, of which also the Columbus Marine Corporation was agent. During the following August she brought in two alien seamen, whom the visiting inspector directed the master to detain. Again, the agent helped the master to detain them, but they escaped. The Commissioner then gave the agent sixty days' notice of a similar hearing, and imposed a fine of two thousand dollars, once more without declaring who was responsible. We shall assume that the bond secured all fines imposed against any person who could be fined, and was given to procure the release of any ships for which the agent acted.

We held in U. S. v. J. H. Winchester & Co., 40 F.(2d) 472, that a ship's agent was not liable for the escape of an alien seaman if the inspector had not served him with a detention order. The clause, "if required," in section 20 (a), meant, we thought, that the "owner, charterer, agent, consignee or master," to become liable, must be personally ordered to detain the alien. If that be true, though the agent learned of the orders directed to the master, the information did not impose any duty upon it; nor the escapes, any fine. It is true that both orders were addressed to all the persons mentioned in the statute, but that, as we view it, made no difference. The master was not the agent of the others—except perhaps of the owner—to receive the notice; each person must be ordered to detain the seamen, on whom any duty was to be imposed. As an action to collect the fines, the cause therefore fails.

This does not, however, dispose of the action on the bond, if, as we are assuming, this was meant to cover all fines levied upon any person, which would prevent the ships' clearances. On that theory a valid fine against the master would be enough, and the foundation for such a fine was laid by the inspector's orders to detain the seamen. Nevertheless, the bond secured only valid fines, and if there were none, it was not forfeited. The question therefore arises whether there was any condition upon the liability to a fine except an escape after the obligor had been "required" to detain the seamen. Explicitly there was none, as there is for example in section 16 (b) and (c) of the Immigration Act of 1924, 8 USCA § 216 (b) and (c), and in sections 7, 9, 14, 18, 35, and 36, of the Immigration Act of 1917 (8 USCA §§ 143, 145, 150, 154, 169, 171), under which some action by the Secretary of Labor is contemplated before any liability can arise. Section 20 (a) of the Act of 1924, 8 USCA § 167 (a), apparently imposed the fine without more. Nevertheless, the section has language which,

as it seems to us, justified the construction later placed upon it by the Commissioner General under the power conferred upon him by section 24 of the same statute (8 USCA § 222). It is this: "No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit" of cash or a bond. This "determination" of liability might conceivably mean the judgment of a court, though that is extremely unlikely, in view of the powers elsewhere given the Secretary to determine similar liabilities. In any event there was at least a permissible doubt as to the proper meaning, which allowed the Commissioner General to construe the section as he did by Rule 22 of the Rules of 1925. Subdivision A of that rule enumerates the fines imposed under the acts of 1917 and 1924, the last being those under the section now at bar. Subdivision B provides as to all fines that "the officer in charge shall serve promptly upon the master, agent, owner or consignee of the vessel, or other responsible person a notice * * * that a fine should be imposed, * * * that he will be allowed 60 days * * * to submit evidence and be heard," and that meanwhile to clear the vessel he must make a deposit or post a bond. Subdivision C provides how this notice may be served; subdivision D for consideration of any evidence submitted by the addressee of the notice, and for a report of the officer in charge; subdivision F for notification to the collector of the decision of the Department. This procedure is plainly what the Commissioner General supposed to be "the determination of the liability"; we think he had power to promulgate the rule, and that it had the force of law. If so, it was a condition upon the imposition of any fine after July 1, 1925, that "the responsible person" should have the prescribed notice of an intention to fine him. The only person getting any such notice was the agent, and, as we have shown, the agent was not liable. Perhaps the master or an owner may be served through the agent, if the proceeding is plainly directed against him and not against the agent, but to perfect a fine against him he must be in some way advised that it is he who is the object of the attack. While either master or owner may in fact be likely to get notice of a claim against the agent, his liability will not always follow upon the agent's. The fault may not be his at all, and as between them he may be able to throw the loss upon the agent; his position will be quite different if the agent is fined and seeks to recover, from that of recouping for a fine paid.

This disposes of the cause of action upon the bond as to the Carnia, all the transactions being after July 1, 1925. Apparently until that time the Commissioner General proceeded under the rules promulgated on February 1, 1924, three months before the act of 1924 took effect. Therefore as to the Iris, in April, May and June of that year, we are confined to the earlier rules. Subdivision A of section 22 of these did not, and of course could not, recite the fines imposed under section 20 (a) of the act of 1924; otherwise it was much the same. The other subdivisions were also the same, the only important difference being that thirty days' notice, instead of sixty, was prescribed. It seems to us that the Commissioner General might make the rules of 1924 applicable to the act of 1924 after it was passed, until occasion arose to revise them. Rule 22 was intended comprehensively to provide the procedure for the collection of all fines imposed by the Immigration Laws. Therefore, in the case of the Iris as of the Carnia, no valid fine was ever perfected against the master, or the owner through the master. The statute did not affect to levy a fine upon the ship. The Secretary, supposing that the order, directed to the master, bound everybody, naturally supposed that the agent might be fined, if he were given the necessary hearing. But as the basis for a fine against him did not exist, the notice was futile; and as the master and the owner got no hearing, the fine against them was never perfected. Thus, even though we give the bond its widest interpretation, the action upon it fails, as does that against the agent for the fines.

Judgment reversed; new trial ordered.