## NATIONAL SURETY CORPORATION v. UNITED STATES.

### No. 10684.

Circuit Court of Appeals, Fifth Circuit.

June 20, 1944.

Rehearing Denied July 18, 1944.

Delbert M. Tibbetts, of New York City, N.Y., and Johns Webb Graham, of Houston, Tex., for appellant.

J. K. Smith, Asst. U. S. Atty., of Houston, Tex., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

This is another suit against a surety on a bond[1] given to secure the payment of a fine imposed under the provisions of Sec. 20(a), Immigration Act of 1924,[2] for failure to detain on board an alien sea-

[1] "U. S. Department of Labor, Immigration Service. Bond for Payment of Sums and Fines Imposed under Immigration Act of May 26, 1924 (Single Entry).

"Know All Men By These Presents, that Georgios Pateras, Master of the SS Marouka Pateras, of Inoussai, Greece, as principal, and National Surety Corporation, a corporation, of New York, New York, as surety, are held and firmly bound unto Fred C. Pabst, Collector of Customs, Collection District No. ......, Port of Houston, and his successor or successors in office, in the sum of One Thousand ($1000.00) dollars, for the payment of which we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

"Witness our hands and seals this 12 day of August, 1940.

"Whereas, the said Georgios Pateras, is master, owner, agent, charterer or consignee of the SS Marouka Pateras from Chios, Greece, which has brought or is expected to bring aliens into the port of Houston, on June, Aug., 1940, and

"Whereas, the said Georgios Pateras may incur liability for penalties or fines imposed and return of passage money required in the case of aliens brought into the United States by it or in any vessel under its control, pursuant to the provisions of Sections 16, 20 and 26, of the Immigration Act of May 26, 1924, and

"Whereas, under the said Immigration Act no vessel against which fines or penalties as provided in the said Act have been imposed, or liability for which remains undetermined, can obtain clearance papers until such liability is determined and such fines or penalties paid unless a bond with sufficient sureties approved by the Collector of Customs be filed,

"Now, Therefore, the Condition of this

Obligation is Such, that if the above-bounden principal shall pay to the Collector of Customs of the said port any and all fines and amounts of passage money found by the Secretary of Labor to be due and payable under the provisions of said Immigration Act of 1924;

"Then this obligation shall be void, otherwise it shall remain in full force and effect; the said principal to have, however, the privilege of making such payments under protest, and without prejudice to any and all legal rights of recovering by appropriate action or proceedings any and all sums so paid as fines or passage money under this bond."

[2] "Sec. 20(a). The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigation officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs." Title 8, Sec. 167, U.S.C.A.

man after being required to do so. Tried on a stipulation,[3] admitting the order to detain and the failure to do so, it would seem that without more ado, the judgment against the surety should be affirmed on the authority of Indemnity Ins. Co. v. United States, 5 Cir., 74 F.2d 22, 23. Here, as there, "The case is at last one of a simple suit on a bond, the conditions of which have been breached." Here, as there, "It is quite plain that the statute requiring the detention of aliens is clear and absolute in its terms, requiring and admitting of little construction." Here, as there, "[The statute] unequivocally subjects a vessel to the payment of $1,000 for each alien seaman whom the master has failed to detain on board after he has been served with a detention order by the immigration officer in charge, or someone acting for him. Lloyd Royal Belge Societe Anonyme v. Elting, D. C., 55 F.2d 340." We said there:

"[The statute] makes no provision for, it does not contemplate, inquiry into the grounds of the order. * * * The only question for determination under it is whether the order was served and there has been failure to detain. * * * Under no compulsion to do so, and with full knowledge of the claimed duress * * *, the protest of the master being noted at the foot of the bond, appellant signed as surety. Because of the making and tender of the bond, the vessel was released. Under these estopping circumstances, appellant has a

---

[3] "I. On the 10th day of June, 1940, the Greek vessel 'SS Marouka Pateras' under command of the Master, Captain Georgios Pateras, arrived in Boliver Roads, Texas. Of the crew of such vessel was one Salvador Pauruga who established to the satisfaction of the Boarding Officer of the United States Immigration Service that he was a bona fide alien seaman serving on such vessel as an employee thereof, signing on her articles in good faith; and that his name appeared on the duly visaed crew list of such vessel on which he arrived and that his entry into the United States was solely in connection with the business of the vessel or in pursuit of his calling as a bona fide seaman and with no intention of abandoning such calling.

"II. However, the Master of said vessel was ordered to detain said Salvador Pauruga on board the vessel by the Boarding Officer of the United States Immigration Service by written order for the sole and only reason that he failed to have an identifying travel document in the nature of a passport as required by Executive Order No. 8429 of June 5, 1940. Solely and only for this reason was said Pauruga ordered detained on board the vessel, and had he had such an identifying travel document in the nature of a passport he would have been permitted to enter.

"III. Subsequent to such order of detention, and despite guards and diligent customary efforts to detain said Pauruga on board the vessel, he escaped ship.

"IV. Notice of liability for fine under United States Immigration Laws, Fine No. 40220/12, Form 679, and Bill and Notice of Fine No. 49092, Form 604, was served on the Master, Georgios Pateras, on June 25, 1940, for failure to detain such seaman as ordered to do, in violation of Section 20(a) of the Act of May 26, 1924, copies of which Notice of Liability for Fine under U. S. Immigration Laws, Form 679, and Bill and Notice of Fine, Form 604, are attached hereto.

"V. On August 12, 1940, said Georgios Pateras, gave bond under the Immigration Act of May 26, 1924, filed with the office of the Deputy Collector in charge of the Port of Houston in the sum of $1000.00, conditioned upon payment to the Collector of Customs of such fines as might be found to be due and payable under said Immigration Act of 1924, in connection with the failure of the Master to detain said Salvador Pauruga, said bond having been given to obtain clearance of the vessel referred to prior to determination on the penalty involved.

"VI. The fine for failure to detain such seaman was determined to be due and payable, on November 5, 1940, and was determined to be due and payable solely upon the basis of the aforesaid Executive Order No. 8429. This Civil Action is upon that aforementioned bond given by Georgios Pateras on August 12, 1940; and had said Salvador Pauruga possessed an identifying travel document in the nature of a passport, as required by Executive Order No. 8429, no bond would have been required and, of course, no fine would have been determined to be due, the fine having been determined to be due, as stated, for the sole and only reason that said Pauruga failed to have such a traveling document.

"VII. The parties to the above entitled and numbered cause, through their attorneys of record, hereby agree that the above and foregoing two (2) pages of typewritten matter are a full and correct statement of the facts relative to such cause."

heavy burden to point out some illegality or invalidity nullifying the obligation it assumed." 74 F.2d 22, 24.

Appellant, recognizing that this is so, points, as differentiating this case from that one, to the stipulation on which this case was decided, that, (a) the seaman established to the satisfaction of the Boarding Officer at the port of arrival his full compliance with the five entry requirements, of Rule 7, Subd. (E), Par. 6, Immigration Rules & Regulations,[4] and (b) he was not detained because of breach of any of them, but solely because he failed to have an identifying travel document in the nature of a passport as required by Executive Order 8429, June 5, 1940,[5] and had he had such an identifying travel document in the nature of a passport, he would have been permitted to enter. It points, too, as a further differentiation to the provision in the bond here absent from the bond in that case that sums "paid as fines * * * under this bond" may be paid by the principal "under protest and without prejudice to any and all legal rights of recovering" same by appropriate action or proceedings. Citing United States v. Columbus Marine Corp., 2 Cir., 62 F.2d 795; Durning v. Mc-Donnell, 2 Cir., 86 F.2d 91; Bank Line, Ltd. v. United States, 2 Cir., 96 F.2d 52; Rio Cape Lines v. United States, 89 Ct. Cl. 307; Compagnie Generale Transatlantique v. Elting, 298 U.S. 217, 56 S.Ct. 770, 80 L.Ed. 1151, it insists that the suit on the bond may be defended on the same grounds which would support a recovery back of amounts paid under it. So defending, it urges: that the order was inoperative because the Acts on which it was based had been superseded by the Immigration Act of May 26, 1924; that neither that Act nor the Immigration regulations adopted pursuant to it authorized detention for the reasons given here, and the detention order was, therefore, invalid and that being invalid, it could not support the fine, the fine was illegal, and there was no liability on the bond.

■ We agree with appellant that the general rule of law which governs the liability of sureties upon bonds is that the surety is not liable unless the principal is, and, therefore, may plead any defense available to the principal. But to this rule there are recognized exceptions. The surety is not excused where the principal when sued takes advantage of a matter of defense which is altogether of a personal character or where the extinction of the principal's obligation arises from a cause which originates in the law. 21 R.C.L. 974. In Indemnity Insurance Co. v. United States, supra, we decided nothing to the contrary of this. What we decided there and what we reaffirm here is that the fact that the bond was given to release the ship and that there was to that extent duress practiced on the master was not, it could not be, set up by the surety as a defense to the bond, because, having voluntarily assumed the obligation of the bond to pay

---

[4] (1) That he is a bona fide seaman; (2) That his name appears on the duly visaed crew list of the vessel on which he arrives; (3) That he is an employee of such vessel and in good faith signed on her articles; (4) That he seeks to enter solely on pursuit of his calling as a seaman; and (5) that he has no intention to abandon such calling.

[5] Executive Order No. 8429 of June 5, 1940. Documents Required of Bonafide Alien Seamen Entering the United States.

"By virtue of and pursuant to the authority vested in me by the Act of May 22, 1918, 40 Stat. 559, as extended by the Act of March 2, 1921, 41 Stat. 1205, 1217, I hereby prescribe the following regulations governing the entry of alien seamen into the United States:

"I. * * *

"II. * * *

"An alien seaman who is not exempt from the passport and visa requirements under Part 1 hereof shall be required to present an identifying travel document in the nature of a passport, showing his nationality and identity and bearing his fingerprints, before he may be granted shore leave for any purpose. The travel document shall be surrendered to the immigration authorities by each seaman at the time of landing and returned to him, upon personal application at the time of departure. * * *

"The Secretary of State and the department head charged with the administration of the immigration laws are hereby authorized to make such additional rules and regulations, not inconsistent with this order, as may be deemed necessary for carrying out the provisions of this order and the statutes mentioned therein.

"This order shall take effect immediately and shall supersede and cancel Executive Order No. 7797 of January 26, 1938, entitled 'Documents Required of Bona Fide Alien Seamen Entering the United States.'"

the amount of the fine assessed and not paid, the surety could not escape the obligation except by showing that the terms of the bond or action taken under it burdened it beyond what was legally demandable of it. We reaffirm what we said in that case. The statute makes no provision for, it does not contemplate inquiry into the grounds of the order. The only question for determination under it is whether the order was served and there has been failure to detain. It is admitted here that the order was served on the master, that he did not detain as ordered, and that the bond was voluntarily entered into by the surety. The statute under which the bond was executed provides, without qualification, that "the owner * * * or master * * * who fails to detain on board any alien seaman * * * until the immigration officer * * * has inspected such seaman * * * or who fails to detain such seaman on board after such inspection * * * if required * * * to do so, shall pay *, * * the sum of $1,000 for each alien seaman in respect of whom such failure occurs." It further forbids clearance pending the determination of the liability of the payment of such fine except upon a deposit or the giving of a bond to secure its payment. As will be noted, this statute does not at all limit the authority of the Immigration Officer to require the detention of a seaman on board. It flatly fixes a fine for failure to detain when ordered to do so. The cases appellant cites hold merely that the giving and service of the order are essential, and that whether it was given and served may be inquired into. They do not hold that the grounds of the order for detention may be. Par. 6, Subd. (e) of the Immigration Rules upon which appellant relies as exclusively fixing the conditions under which a seaman may enter is not an enabling act. It does not grant rights of entry. It merely sets out five conditions for entry, which must at all times be complied with, and obligates immigration officials to order detentions in all cases of non-compliance with these provisions. It does not prevent detention for other reasons not named.

 If, however, we could agree with appellant that the grounds of the detention order may be inquired into, we could not agree that it would stand in any better case. For we think it quite clear that the authority conferred on the president by the 1918 Act, 22 U.S.C.A. § 223 et seq., and continued by the Act of March 2, 1921,[6] fully supports the Executive Order under the authority of which the detention was ordered, and that it was the duty of the Immigration Service to carry out the order and detain on board any seaman not in compliance with it. That the Act of 1921 did extend the powers granted by the Act of 1918, has been affirmed in many cases,[7] and doubted in none except in Johnson v. Keating, 1 Cir., 17 F.2d 50, and there it was as to immigrants thus entering permanently. It is true that the cases hold that regulations made under its authority must not be inconsistent with the provisions of the Immigration Act of 1924, but the order in question is not inconsistent with that act. If the immigration authorities had by regulation adopted the order, it would be beyond question that the detention would be valid. There can be equally no question that without adopting the order as a rule or regulation, the Immigration Authorities were obligated to enforce it.

 In addition to this main point, appellant makes two subordinate points, neither of which is well taken. One of these is that the order to detain was issued not by the Immigration Officer at the port of arrival or the Secretary of Labor but by a boarding officer. We met that question and determined it adversely to appellant in the Indemnity case, supra. The authorities are clear both that it was competent for the boarding officer to act for the Immigration Officer in charge, Lloyd Royal Belge Societe v. Elting, 2 Cir., 61 F.2d 745, and that, having accepted the order as valid and having made the bond upon the assumption that it was, the surety may not now

---

6 22 U.S.C.A. § 227, "Regulations as to alien passport requirements continued. The provisions of the Act approved May 22, 1918, being the four preceding sections, shall, in so far as they relate to requiring passports and visas from aliens seeking to come to the United States, continue in force and effect until otherwise provided by law. (Mar. 2, 1921, c. 113, § 1, 41 Stat. 1217.)"

7 United States ex rel. Le Grazie v. Wallis, D.C., 278 F. 838; Flora v. Rustad, 8 Cir., 8 F.2d 335; Takeyo Koyama v. Burnett, 9 Cir., 8 F.2d 940; United States ex rel. London v. Phelps, 2 Cir., 22 F.2d 288; United States ex rel. Graber v. Karnuth, 2 Cir., 30 F.2d 242; United States ex rel. Komlos v. Trudell, 2 Cir., 35 F.2d 281.

contend that it was not. Indemnity Ins. Co. v. United States, supra; National Surety Co. v. Holtzman, 4 Cir., 43 F.2d 544; United States v. Columbus Marine Corp., 2 Cir., 62 F.2d 795. Another subordinate point made is that the order was not promulgated until after the seaman had sailed and to give it effect against him would be to give it a retroactive effect not intended, and Transatlantica Italiana v. Elting, 2 Cir., 66 F.2d 495 is cited in support. But this will not at all do, for here no effort is being made to fine the ship or the seaman because of his shipping without having the required visa. The fine was assessed not because he departed for the United States without it, but because, without having it, he was allowed to escape ship and enter the United States after his detention had been ordered. The judgment was right. It is affirmed.