## COMPAGNIE GENERALE TRANSATLANTIQUE v. ELTING.
### No. 120.

Circuit Court of Appeals, Second Circuit.
March 11, 1935.

Martin Conboy, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellant.

John M. Lyons, of New York City (Roger O'Donnell, of Washington, D. C., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The complaint sets forth four causes of action. In the first and second, the plaintiff seeks to recover the amount of fines imposed by the Secretary of Labor under section 16 of Immigration Act of 1924 (8 USCA § 216) for bringing in immigrants without appropriate immigration visas, and, in the third and fourth, the plaintiff seeks to recover the amount of fines imposed by the Secretary of Labor under section 9 of the Immigration Act of 1917, as amended by section 26 of the Immigration Act of 1924 (8 USCA § 145), for bringing in aliens afflicted with dangerous contagious diseases, when the existence of such diseases might

have been detected at the time of embarkation by means of a competent medical examination. In each of the four cases the alien was deported and the fine was $1,000, plus the amount paid by the alien for passage to the United States. The court below directed a verdict for the plaintiff upon each cause of action. We think that none of the grounds for recovery should prevail and that the judgment must be reversed.

1. The passenger involved in the first cause of action was a Belgian who had been a resident of Paris, employed by a French concern known as the Establissement Textiles. From it he obtained a letter purporting to show that it was sending him to the United States to take orders for textile materials from convents and other religious institutions. By means of this letter he secured a nonimmigrant visa from the American consul in Paris as "an alien visiting the United States * * * temporarily for business." If the information which he gave the American consul had been correct, he would have been a temporary visitor under section 3 (2) of the act of 1924 (8 USCA § 203 (2), and the steamship would not have been subject to a fine under section 16 (a) and (b) of the act of 1924 (8 USCA § 216 (a, b), for transporting a quota immigrant having a visa which specified him as a nonquota immigrant. That he was not in fact a nonquota immigrant coming here "temporarily for business" is evident from a letter which he had from an American importer named Singer, living at Brighton, Mass. Singer had written him to come to this country to sell Belgian textiles, and had offered to guarantee him $2,500 for five months' service.

There can be no doubt that this salesman was an "immigrant" within the meaning of section 3 of the act 1924 (8 USCA § 203), and not an alien coming here "temporarily for business," and we understand that this was not disputed on the argument. Karnuth v. United States, 279 U. S. 231, 49 S. Ct. 274, 73 L. Ed. 677; United States ex rel. Di Rosa v. Day (C. C. A.) 37 F.(2d) 459. We also think that the steamship company could have ascertained, by the exercise of reasonable diligence, that the alien was a quota immigrant not coming temporarily for business. He carried Singer's letter with him, and his arrangement to come here for hire could have been as easily ascertained by the steamship company as it was by the immigration officials, who discovered it readily and at once. The company relied on the

visa and made no independent examination. To secure remission of the fine, the statute placed upon the company "the burden of establishing, to the satisfaction of the Secretary, that it could not have been ascertained by the exercise of reasonable diligence that the alien was a quota immigrant." Lloyd Sabaudo Societa v. Elting, 287 U. S. 329, 341, 53 S. Ct. 167, 173, 77 L. Ed. 341. We cannot say that the plaintiff sustained this burden and that the Secretary did not have ground for holding that reasonable inquiry of the alien would have disclosed that he was coming to the United States as a contract laborer and not "temporarily for business."

■ 2. Buonacore, the passenger involved in the second cause of action, was a quota immigrant not in possession of an immigration visa. He sought admission to the United States as a citizen by reason of his alleged birth in this country, and presented a United States passport which bore his photograph. He was excluded under the provision of section 13 (a) (1) of the Immigration Act of 1924, 8 USCA § 213 (a) (1), as an immigrant not in possession of an immigration visa. The evidence shows that he was not the person for whom the passport was originally issued, but that his photograph had been substituted for that of the real owner. The passport described the holder as having blue eyes and being 5′ 1″ in height, whereas the alien had brown eyes and was 5′ 4½″ in height.

There can be no doubt that the passport was not that of the person presenting it and that he was properly excluded as an alien who did not present an immigration visa. The only question is that of the exercise of reasonable diligence by the steamship company. In view of the danger of fraudulent entry through altered passports with which we have had to deal on other occasions, we are not persuaded that the Secretary of Labor was arbitrary in failing to be satisfied that the transportation company had exercised reasonable diligence. The company evidently paid no regard to the statement in the passport that the alien was only 5′ 1″ in height and had blue eyes, whereas the person presenting it was 5′ 4½″ in height and had brown eyes. The difference in height is very marked, and the difference in the color of the eyes should have been noticed if attention had been paid to anything except the photograph. We think that the plaintiff did not sustain the burden of showing that the Secretary acted without reason.

■ 3. Michailides, the passenger involved in the third cause of action, was a native of Cyprus. He arrived at New York on the Ile de France. The record shows that he held a quota immigration visa issued by the American consul at Port Said, Egypt, on June 13, 1930, and prior to the issuance of that visa was medically examined by a physician and certified to be free from any disease that would prevent him from immigrating to the United States. From Port Said he proceeded to Havre, where he was again medically examined by a physician of the steamship company and found free from disease; the last examination occurring on July 9, six days before the vessel arrived at New York. At Ellis Island he was again examined by two government surgeons, who stated that he was afflicted with trachoma, which, in their opinion, "might have been detected by competent medical examination at the foreign port of embarkation." On the strength of this certificate, he was deported at the expense of the steamship company after a hearing before the board of special inquiry. The transportation company protested at the fine, which was imposed, on the ground that the opinion of the public health surgeons at Ellis Island ought not to prevail over that of the findings by the physicians at Port Said and Havre, and that the opinion of the Port Said and Havre physicians ought to satisfy the Secretary of Labor that the fine should be remitted. The Secretary refused to remit the fine.

4. Georgiou, the passenger involved in the fourth cause of action, arrived at New York on the steamship Ile de France. He also was a native of Cyprus, and was found by the examining surgeons to be afflicted with trachoma, which might have been detected by competent medical examination at the foreign port of embarkation. He secured a quota immigration visa from the American consul at Lyons, on June 26, after examination by a physician who certified that he had no disease. He was again examined at Havre, the port of embarkation, by a physician of the French Line, who found him free from disease. Notwithstanding this, he was deported and a fine was imposed upon the transportation company for bringing him to the United States. A protest was filed on behalf of the company on grounds similar to those in the Michailides Case but the Secretary of Labor refused to remit the fine.

In the third and fourth causes of action the District Judge expressed doubt as to

whether the plaintiff should be allowed to recover the fines imposed. He directed recovery because of the remarks of Justice Stone in Lloyd Sabaudo v. Elting, 287 U. S. 329, 338–340, 53 S. Ct. 167, 77 L. Ed. 341, in dealing with the case of the alien Fusco. Here, however, there were not affidavits or testimony as in the Fusco Case setting out information as to the examinations by the physicians abroad. There was nothing more than the protest of the plaintiff's attorney, corroborated by the testimony of the aliens that they were twice examined before embarkation. No details as to the character or extent of the examinations were furnished. Moreover, the interpretation of the District Judge of the opinion of Justice Stone in the Fusco Case was before our decision was rendered in Compagnie Generale Transatlantique v. Elting, 73 F.(2d) 321. There we refused to interfere with the exercise of discretion of the Secretary of Labor where the facts resembled those in the case at bar. In that case, as in the case at bar, there was no "detailed information" as to the prior examinations, and we cannot suppose that mere proof of the fact that there were examinations prior to the date of embarkation, without anything further, would have affected the judgment of the physicians at Ellis Island, or have resulted in other action than that which the Secretary of Labor adopted.

In Compagnie Generale Transatlantique v. Elting (C. C. A.) 73 F.(2d) 321, 323, Judge Swan interpreted the opinion of the Supreme Court in the Fusco Case as follows:

"We do not understand the Supreme Court's opinion to lay down a hard and fast rule to the effect that whenever the shipowner presents a certificate by a doctor of adequate experience that he made a medical examination upon embarkation and found no trace of the disease discovered upon arrival, the Secretary must transmit this information to the physicians at Ellis Island if he would escape the charge of arbitrary action and an unfair hearing. Rather the test is whether the certificate is such as might reasonably affect the judgment of the examining physicians at the port of arrival; if it is, and the Secretary, without submitting it to them, relied solely on their formal opinion unsupported by the medical or clinical facts on which it is based, the hearing is unfair."

We are of the opinion that the plaintiff has not sustained the burden of showing that the Secretary acted arbitrarily in declining to remit the fines involved in the third and fourth causes of action.

Judgment reversed as to each of the four causes of action.