COMPAGNIE GENERALE TRANSATLANTIQUE *v.*
ELTING, COLLECTOR OF CUSTOMS.*

No. 6.   Argued October 14, 1935.—Decided May 18, 1936.

*Mr. Roger O'Donnell,* with whom *Messrs. William J.
Peters* and *Lambert O'Donnell* were on the brief, for
petitioners.

---

* Together with No. 7, *Hamburg-American Line* v. *Elting, Collec-
tor of Customs.*   Certiorari to the Circuit Court of Appeals for the
Second Circuit.

*Assistant Attorney General MacLean,* with whom *Solicitor General Reed* and *Messrs. Paul A. Sweeney, M. Leo Looney, Jr.,* and *W. Marvin Smith* were on the brief, for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

These cases are much alike. Each involves the validity of a fine imposed on the owner of a foreign ship for an asserted failure to detain on board certain alien seamen after their examination. In both the owner seeks to recover money deposited with the collector of customs to cover the fine, if and when imposed. The deposit was made to obtain clearance of the vessel pending the administrative proceedings which resulted in the fine. A trial by jury resulted in a directed verdict and judgment for the collector, which the Circuit Court of Appeals

affirmed. 74 F. (2d) 209. The cases are here on certiorari, which was granted because of an apparent divergence in Court of Appeals decisions.

The material facts, taken largely from controlling allegations and admissions in the pleadings and in part from undisputed evidence are as follows:

In No. 6 the *Ile de France,* owned by a foreign corporation, arrived at the port of New York from a foreign port February 6, 1930, with two aliens in her crew. Under the supervision of the immigration officer in charge, an inspector boarded the ship, examined the crew, and directed the master to detain the two aliens on the ground that they were not shown to be bona fide seamen. The master endeavored to detain them, but they escaped during the night following the direction given to the master. The direction was in writing and addressed "To the Owner, Agent, Consignee, Master or Officer in Charge of the *Ile de France,*" but was neither served on the owner nor brought to its knowledge prior to the escape. The master reported the escape and the immigration officer then served on the New York agent of the ship a notice to the effect that a fine was about to be imposed for the failure to detain; that a hearing would be allowed if desired; and that the ship would be granted clearance for her outward-bound voyage upon condition that there be deposited with the collector of customs the sum of $2,000 to cover the fine, should one be imposed. The owner made the deposit under protest, and through counsel requested and participated in a hearing; after which the administrative officers imposed on the owner a fine of $1,000 in respect of each of the alien seamen not detained.

In No. 7 the owner was another foreign corporation. The direction to detain related to but one alien seaman, was delivered to the chief officer of the ship, and was then brought to the knowledge of the master but not to

the knowledge of the owner. The master took steps to detain, but the alien seaman escaped. The amount of the deposit, as also the fine, was $1,000. In all other material respects the facts are like those in No. 6.

The statute under which the fines were imposed is § 20 (a) of the Immigration Act of 1924, c. 190, 43 Stat. 164, 8 U. S. C. 167 (a), which provides:

"The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs."

The purpose of the section is to prevent aliens from unlawfully gaining entrance into the United States under the guise of seamen, and to this end it makes provision for detention on board, both temporary and continued, and for imposing fines on those who, when under a duty to detain, fail to do so. It relates to all vessels arriving within from without the United States with alien seamen employed thereon. Such vessels may be either do-

mestic or foreign, may be owned by individuals or corporations, may be engaged in transportation for hire or otherwise, and may be, as the section plainly contemplates, in the immediate control of the owner or of a charterer, agent, consignee or master.

The fine is laid, not on the owner generally, but on the "owner, charterer, agent, consignee or master of any vessel . . . who fails to detain" until an examination is made, or "who fails to detain" after examination "if required" by the immigration officer "to do so."

Our present concern is with a fine for failing to detain after examination. A duty so to detain does not arise unless and until such detention is required by the immigration officer. Obviously the requirement must be communicated to the one on whom the duty is to rest; otherwise he could not be regarded as "required" so to detain or as "failing" to do so. This is conceded in the brief for the collector, where it is said: "The statute employs the word 'required' in respect of the continued detention. Of course, this means that in some manner the order of detention must be brought home to the party sought to be charged."

Here the requirement was communicated to the master of the ship but was not in any way brought to the knowledge of the owner; and yet the administrative officers imposed the fine on the latter. The court below sustained this administrative action on the theory that the master of a ship represents the owner, and therefore notice given to the master may and should be imputed to the owner. But in our opinion the section does not admit of the application of that theory. It contains nothing indicative of a purpose to regard notice to one of the enumerated persons as binding the others or any of them. On the contrary, it deals with all in the same way, includes each of them in the enumeration by reason of his relation to the vessel and his authority over her,

and puts each on a plane of individual duty and liability regardless of any relation of one to another.

We conclude therefore that so much of the section as is pertinent here is intended to have effect as follows: A master in charge who is required by the immigration officer to detain alien seamen after examination becomes thereby personally charged with a duty to detain them, and, if he fails therein, becomes personally subject to the prescribed fine. The same thing is true of the owner, charterer, agent or consignee. But none is charged with a duty so to detain unless he is notified of that requirement, and notice to one does not without more operate as notice to another.

Earlier decisions in the Court of Appeals, while dealing with facts somewhat different from those now presented, gave to the section a construction similar to that which we give to it. In *United States* v. *J. H. Winchester & Co.*, 40 F. (2d) 472, there was an effort to subject the agent of a foreign ship to a fine for a failure to detain after inspection. Notice to detain had been served on the master but not brought to the knowledge of the agent. Counsel for the Government urged that, as the ship was foreign, notice to the master bound all, including the agent. But the court held that the section makes no distinction between foreign and domestic vessels; that to be effective the notice to detain must be brought home to the party sought to be charged; and that notice to the master does not suffice to charge the agent. *United States* v. *Columbus Marine Corp.*, 62 F. (2d) 795, involved another effort to collect a fine from a ship's agent. A detention order addressed to all who are enumerated in the statute had been served on the master but not on the agent. The court followed the decision in the *Winchester* case, ruled that as the order was served only on the master it did not impose any duty on the agent, and therefore that he was not liable for the failure to detain.

*Lancashire Shipping Co.* v. *Elting,* 70 F. (2d) 699,[1] presented still another effort to fine a ship's agent where the order to detain had been communicated to the master only. The court held that the agent, being without notice of the order, was not required to detain; and in rejecting a contention that the notice to the master bound the agent the court said:

"The master was not the representative of the agent and in accepting service of the detention order, he may not be assumed to have acted for it [the agent]. The master is a party under the statute made liable for his violation. He must be regarded as acting in his individual capacity in taking the order."

While the admiralty law regards the master of a ship as the agent of the owner,[2] the section before us takes no account of that relation but deals with the master just as it does with the owner. If either is notified to detain he must comply or be subject to a fine. Nothing in the section indicates that notice to the master and a failure by him are to be imputed to the owner and made a basis for fining the latter.

We conclude that the direction of verdicts for the collector was error and that the judgments should be reversed and the cases remanded to the District Court for a new trial.

*Judgments reversed.*

---

[1] Certiorari denied, 293 U. S. 594.

[2] The agency is not general but special, as is explained in *General Interest Insurance Co.* v. *Ruggles,* 12 Wheat. 408, 411–412.