## LAW et al. v. UNITED STATES.
### No. 5862.

District Court, D. Massachusetts.

Jan. 27, 1937.

G. Philip Wardner, of Boston, Mass., for plaintiffs.

Francis J. W. Ford, U. S. Atty., by Edward O. Gourden, Asst. U. S. Atty., both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is a suit to recover a penalty which plaintiffs say was unlawfully exacted. It was heard upon agreed facts.

The statute imposing the penalty is section 20(a) of chapter 190 of the Immigration Act of May 26, 1924 (8 U.S.C.A. § 167(a). This statute reads:

"§ 167. (a) *Detention of seamen on board vessel until after inspection; detention or deportation; penalty; clearance to vessels.* The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the

Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs."

The stipulated facts, stated briefly, are that on April 8, 1932, the British steamship Traprain Law, David Roberts, master, arrived at the port of Boston. An immigration inspector boarded the vessel on April 9 and gave to the chief officer a notice to detain on board and deport nine of the crew who were Chinese. While the notice was addressed to the "Owner, Agent, Consignee, Master or Officer in Charge" of the steamship, it was served only on the chief officer. One of the Chinese escaped on April 10, following which the Commissioner of Immigration for the Boston District served upon the ship's agent at Boston notice of liability for a fine of $1,000 for failure to detain the escaped seaman. This notice was served by mail upon the agent only.

In order to obtain clearance, the master gave a bond in the sum of $1,000 to the Collector of Customs of the Port of Boston, with the Indemnity Insurance Company of North America as surety. This bond recited that the master might incur liability for penalties or fines imposed under the provisions of the statute above quoted; and the condition of the bond was that the principal should pay the collector "any and all fines * * * found by the Secretary of Labor to be due and payable under the provisions of said Immigration Act of 1924."

The plaintiffs filed with the Secretary of Labor a· written request that the fine be not imposed, setting forth their reasons why they had not incurred liability.

On May 20, 1932, the Board of Review, after hearing counsel for the plaintiffs, ordered that the fine be imposed. It does not appear, however, that following this action of the Board of Review the Secretary of Labor formally imposed the fine. On May 26, 1932, the Commissioner General of Immigration wrote to the Commissioner of Immigration at Boston directing that the fine be imposed, and so advised plaintiffs' attorney by letter. Thereafter the Treasury Department, through the office of the Collector of Customs at Boston, informed the Indemnity Insurance Company of North America that unless the penalty under the bond was paid, the Department would declare all bonds in the Port of Boston in default. The plaintiffs, on August 9, 1932, under protest paid the fine of $1,000 to the collector, and it is to recover this fine that this petition is brought under the Tucker Act (28 U.S. C.A. § 41 (20).

It has been held that the statute does not impose a fine upon a vessel but upon one or more of the class of individuals enumerated in the statute. Plaintiffs concede that if a fine could legally be imposed upon any one of the persons enumerated, they would not be entitled to recover. They contend, however, that no fine could legally be imposed upon the owner, charterer, agent, consignee, or master of the vessel inasmuch as none of these was required to detain and deport the alien.

This contention must be regarded as sound in view of a recent decision of the Supreme Court in the case of Compagnie Generale Transatlantique v. Elting, Coll. of Customs, 298 U.S. 217, 56 S.Ct. 770, 772, 80 L.Ed. 1151. That case involved the validity of a fine imposed upon the owner of a ship for failure to detain alien seamen on board after examination. The notice to detain was directed to the "owner, agent, consignee, master or officer in charge." It was not served upon the owner nor brought to his knowledge. The penalty was imposed upon the owner. The court, in the course of its opinion, said that, "A duty so to detain does not arise unless and until such detention is required by the immigration officer. Obviously, the requirement must be communicated to the one on whom the duty is to rest; otherwise he could not be regarded as 'required' so to detain or as 'failing' to do so." The court further remarked: "We conclude, therefore, that so much of the section as is pertinent here is intended to have effect as follows: A master in charge who is required by the immigration officer to detain alien seamen after examination becomes thereby personally charged with a duty to detain them, and, if he fails therein, becomes personally subject to the prescribed

fine. The same thing is true of the owner, charterer, agent, or consignee. But none is charged with a duty so to detain unless he is notified of that requirement, and notice to one does not without more operate as notice to another."

The fine in the instant case was ordered before this decision in Compagnie Generale Transatlantique v. Elting, supra, came down. It is reasonable to presume that had the situation arisen subsequently to that decision the penalty would not have been imposed. That case overruled several earlier cases which had applied the well-known maxim that notice to the agent is notice to the principal and had held the master or owner liable when notice had been given to a subordinate. In the Compagnie Generale Transatlantique Case, supra, however, we find the court adding: "While the admiralty law regards the master of a ship as the agent of the owner, the section before us [8 U.S.C.A. § 167 (a)] takes no account of that relation, but deals with the master just as it does with the owner. If either is notified to detain, he must comply or be subject to a fine. Nothing in the section indicates that notice to the master and a failure by him are to be imputed to the owner and made a basis for fining the latter."

■ The conclusion follows that the fine was illegally exacted. The government nevertheless contends that even if it admitted the invalidity of the fine, it could successfully defend a suit for its recovery. This, as I understand it, is based upon two grounds: (1) That the action of the Secretary of Labor in imposing the fine is not subject to judicial review; and (2) that the $1,000 was voluntarily paid to the government. Neither of these grounds can be sustained. While the findings of the Secretary as to the necessity for detaining or deporting the alien may not be subject to judicial review, it is clear that an aggrieved party may invoke the jurisdiction of the court if the Secretary has exceeded the authority conferred upon him by statute. Lloyd Sabaudo Societa v. Elting, 287 U.S. 329, 335, 53 S.Ct. 167, 170, 77 L. Ed. 341; Lancashire Shipping Co. v. Elting (C.C.A.) 70 F.(2d) 699, 701.

Respecting the second ground, the payment was made under protest and, moreover, the arbitrary demands of the collector of the Port, threatening to default all bonds of the surety if it did not pay, amounted to duress, either of which would rob the payment of all attributes of a voluntary payment which would bar a right of recovery.

Plaintiffs may have judgment for the amount claimed in their petition.