**CUNARD S. S. CO., Limited, v. ELTING, Collector of Customs.**

**No. 316.**

Circuit Court of Appeals, Second Circuit.
June 6, 1938.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for defendant.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

These appeals involve four causes of action to recover the amounts of fines imposed upon the steamship company for bringing in aliens who were excluded. Three of the fines were imposed under section 16 of the Immigration Act of 1924, 8 U.S.C.A. § 216, for bringing in quota immigrants without immigration visas; one was imposed under section 20, 8 U.S.C.A. § 167, for failure to detain on board an alien seaman whose detention had been ordered by the immigration authorities. The case was tried before the court and a jury of one upon stipulated facts, and each side moved for a directed verdict. In effect, each cause of action is a separate case, although several of them present common questions.

*Celeste Poloni:* This alien arrived on June 7, 1929. He was travelling under the name of Rocco Visinoni, an American citizen, and presented the latter's passport issued at Washington, December 26, 1928. Upon questioning by the board of special inquiry, he at once admitted that the passport and the photograph attached thereto were Visinoni's, who, he said, was his cousin and had died in Italy during the spring. The alien having been excluded, a fine was imposed upon the steamship company for bringing in a quota immigrant who was not in possession of an immigration visa.

The company contends that the Secretary of Labor acted arbitrarily in holding that the carrier should have discovered in the exercise of reasonable diligence that Poloni was using a passport not his own. The burden is upon the carrier to establish to the satisfaction of the Secretary that

reasonable diligence was exercised. Lloyd Sabaudo Societa v. Elting, 287 U.S. 329, 341, 53 S.Ct. 167, 172, 77 L.Ed. 341. The district court held that this burden was not carried; and, although the case is close, we cannot say this was error. The carrier's agent at Turin, Italy, reported that he sold the ticket to a person whom he identified with the photograph on the passport; and Poloni must have passed the scrutiny of officials at the Italian border and again at Cherbourg where he embarked. Consequently, the plaintiff's protest against imposition of the fine suggested that there may have been a substitution after the rightful holder of the passport had boarded the ship. This, however, was mere conjecture, without proof. It is true that the record of the inquiry at Ellis Island contains no statement that Poloni did not closely resemble the photograph of Visinoni attached to the passport; but an inference that he did not may be drawn from the fact that the examining inspector immediately asked him "Whose passport are you making use of?" We think the case is governed by Compagnie Generale Transatlantique v. Elting, 2 Cir., 75 F.2d 944; Navigazione Generale Italiana v. Elting, 2 Cir., 76 F.2d 885, and New York & Porto Rico S. S. Co. v. United States, 2 Cir., 66 F.2d 523, rather than by Transatlantica Italiana v. Elting, 2 Cir., 66 F.2d 515, where the alien's own photograph had been substituted so skilfully as to avoid detection by reasonable diligence.

■ The carrier contends that the fine was illegally imposed because ordered by an assistant to the Secretary of Labor and no proof was presented that he had considered the evidence and findings of the board of review. The decisions of the Supreme Court in the Morgan Case are relied upon. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. ——, decided April 25, 1938. The first appeal held that it was error to strike from the bill of complaint allegations that the Secretary of Agriculture had made his order without having heard or read the evidence and without having heard or considered the arguments submitted, and that his sole information with respect to the proceeding was derived from consultation with employees in the department. The second appeal brought up the evidence which was introduced in support of these allegations, and the court held that the plaintiff had not been accorded the "full hearing" to which the statute entitled him. In the case at bar there is no proof that the assistant to the Secretary acted without considering the evidence and findings of the board of review; on the contrary, there is a presumption that he did his duty. In the absence of evidence to the contrary that is sufficient. British Empire Steam Nav. Co. v. Elting, 2 Cir., 74 F.2d 204, certiorari denied 295 U.S. 736, 55 S.Ct. 648, 79 L.Ed. 1684; Lloyd Royal Belge Societe Anonyme v. Elting, 2 Cir., 61 F.2d 745, 746, 747, certiorari denied 289 U.S. 730, 53 S.Ct. 526, 77 L.Ed. 1479; United States ex rel. Petach v. Phelps, 2 Cir., 40 F.2d 500.

■ *Pasquale Pappalardo:* This cause of action also seeks recovery of a fine imposed for bringing in a quota immigrant without an immigration visa. The same two contentions already discussed are likewise urged. They must suffer the same fate, for Pappalardo's case is weaker than Poloni's. He arrived at New York on September 21, 1928, claiming to be an American citizen by virtue of birth in Peekskill, New York, and he presented a passport issued by the United States Consul at Naples, May 14, 1928, which he stated he had obtained on the strength of his birth certificate. The certificate was not produced and he explained that the Consul or the carrier's agent had detained it. His signature corresponded with that on the passport and the photograph attached thereto, but the board of special inquiry noted that the passport bore evidence that the photograph had been substituted for one previously attached, and noted also that the description given in the passport did not accurately describe Pappalardo. He was 3½ inches taller than the passport description, and had dark brown hair and blue eyes, whereas the passport owner was described as having blond hair and brown eyes. There were also discrepancies in Pappalardo's testimony, but they need not be detailed as the passport alone was sufficient to justify the Secretary's conclusion that reasonable diligence would have detected the fraud. Compagnie Generale Transatlantique v. Elting, 2 Cir., 75 F.2d 944.

■ The steamship company further contends that the fine was invalid because the passport was not preserved and made a part of the record. For this it cites Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010, and Ohio Bell Tel. Co.

v. Public Utilities Commission, 301 U.S. 292, 303, 57 S.Ct. 724, 730, 81 L.Ed. 1093. These cases stand for the proposition that to constitute a fair hearing, the record must preserve "the essentials on which the executive officers proceed to judgment;" otherwise the limited review permitted to the courts is impossible. But in the case at bar preservation of the actual passport was not essential because the minutes of the inquiry adequately state the defects in the passport, namely, the substitution of a photograph and the discrepancies in personal description.

■■■■ *Acrive Boskenis:* On this cause of action the trial judge directed a verdict for the plaintiff, and the defendant has appealed. Here also the basis of the fine was bringing in a quota immigrant without an immigration visa. This alien arrived in June 1929, claiming to be an American citizen. She was in possession of a birth certificate showing her birth in Milwaukee, Wisconsin, on October 22, 1910, and she was accompanied by a man who testified he was her cousin and corroborated her statements as to birth in this country and the names of her parents. While there were slight discrepancies between the birth certificate and what she said about her parents' ages, the really damaging evidence was a Greek passport which recited that she was born in Greece. She could explain this only as a mistake. In recommending the imposition of the fine the board of review relied strongly upon the contradiction between the passport and the birth certificate as to her place of birth. We think this was not justified, for there is nothing to indicate that the carrier's agents ever saw the passport. When she purchased her ticket at Piraeus, the agent took the precaution to submit the birth certificate to the American consul, who pronounced it genuine. A similar precaution was taken by the agent at Cherbourg where she embarked. Of course, the American consuls did not vouch for her identity as the person named in the certificate, but the cousin who accompanied her did. When a prospective passenger is possessed of an American birth certificate, which is pronounced genuine by American consular officers, and the passenger's statements as to birth and parentage are corroborated by a relative, we do not see what further inquiry the carrier should reasonably be expected to make, in the absence of something to arouse suspicion. Accordingly, we concur in the

trial court's conclusion that the Secretary of Labor was not justified in ruling that the exercise of due diligence by the carrier would have disclosed that this passenger was an immigrant. See Transatlantica Italiana v. Elting, 2 Cir., 66 F.2d 515.

■■■ *Julius Lorie:* This cause of action relates to an alien seaman who arrived on the S. S. Berengaria in October 1926 and escaped after his detention on board had been ordered by an immigration inspector. The detention notice was served upon the master (through the chief officer), while the notice of intention to impose a fine was served upon the owner, the plaintiff. Concededly the fine was illegally imposed. Compagnie Generale Transatlantique v. Elting, 298 U.S. 217, 56 S.Ct. 770, 80 L.Ed. 1151. Nevertheless, the defendant contends that judgment for its recovery is erroneous because it was paid voluntarily and without coercion.

When the carrier received notice of intention to impose a fine, it filed no protest and through its Washington attorney submitted the case "on the record" without offering evidence or argument. About January 27, 1927, it was notified that a fine had been imposed. The fine was paid on February 1st without protest. A stop order had been issued January 27, 1927, against the clearance of the S. S. Berengaria; it was lifted when the fine was paid. The Berengaria had last cleared at New York on January 7, 1927, which was prior to imposition of the fine, and her next entry was March 9, 1927. It does not appear that the plaintiff knew of the stop order, although it was familiar with the practice of the collector of customs to withhold clearance after a vessel's next arrival, if she was not in port when the collector received notice of the fine, until payment of the fine was made.

■■■ In Union Pacific Railroad Company v. Dodge County Commissioners, 98 U.S. 541, 543, 25 L.Ed. 196, the Supreme Court adopted as a correct statement of the common law rule the following quotation: "Where a party pays an illegal demand with a full knowledge of all the facts which render such demand illegal, without an immediate and urgent necessity therefore, or unless to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment must be deemed voluntary and cannot be recovered back. And the fact that the party at the time of making the payment files

378

a written protest does not make the payment involuntary."

 This was a suit to recover taxes collected under a statute subsequently held invalid. The county treasurer held a warrant which would have authorized him to seize the plaintiff's goods to enforce collection of the taxes but he had made no attempt to act under it. Accordingly, the court held that there was not such immediate and urgent necessity for the payment as to imply that it was made under compulsion. In Ward v. Love County, 253 U.S. 17, 23, 40 S.Ct. 419, 421, 64 L.Ed. 751, it is said that some of the general observations in Union Pacific Railroad Company v. Dodge County Commissioners must be deemed to have been modified by later cases; but the general principle that payment under duress is essential to recovery remains unshaken. Where a taxpayer pays taxes before their payment can be enforced by distraint or the imposition of other penalties, it has been held that such premature payment is voluntary and therefore not recoverable, even though the taxes were invalid. Nashville, C. & St. L. Ry. Co. v. Marion County, 120 Tenn. 347, 108 S.W. 1058; City of Covington v. Lovell, etc., Co., 204 Ky. 40, 263 S.W. 676; see Williams v. Merritt, 152 Mich. 621, 116 N.W. 386; Peninsula Iron, etc., Co. v. Crystal Falls, 60 Mich. 79, 26 N.W. 840. In our opinion the mere issuance of the stop order against clearance of a vessel which was expected to arrive in port six weeks later would not render the present payment one made under duress. While the possibility that the vessel might be lost at sea, or for other reasons might never return to the port of New York, is perhaps too remote a contingency to be entitled to much weight, the length of time which would elapse before she would come within reach of the collector makes the payment premature, for the question whether or not there is sufficient coercion to require restitution is a matter of degree. See American Law Institute, Restitution, § 75, pp. 322, 323. Undoubtedly, the real reason for making the payment so long in advance of any necessity for obtaining clearance of its vessel was the plaintiff's belief that the fine was valid. Until the decision in Compagnie Generale Transatlantique v. Elting, 298 U.S. 217, 56 S.Ct. 770, 80 L.Ed. 1151, was handed down nine years later, every one believed that notice of detention could be given to the master and notice of intention to impose a fine for failure to detain could be given to the owner. This explains why no protest was filed either against imposition of the fine by the Secretary or against its payment to the collector. We think that the plaintiff paid because it supposed it would have to pay; it did not mean to raise any question as to the validity of the fine. Hence the payment must be deemed a voluntary payment induced solely by a mistake of law. As such it is not recoverable. American Law Institute, Restitution, § 45.

That part of the judgment questioned by the plaintiff's appeal is affirmed. On the defendant's appeal, the count relating to Boskenis is affirmed, and the count relating to Lorie is reversed.