**WEST INDIAN CO., LIMITED, et al.**

**v.**

**C. L. ROOT, Collector of Customs**

# No. 8880

# Circuit Court of Appeals

### Third Circuit

# Argued June 8, 1945

# Decided September 24, 1945

*See, also, 151 F.2d 493*

469

RENATO C. GAILLORENZI, New York City (GEORGE H. T. DUDLEY, Charlotte Amalie, Virgin Islands, on the brief), *for appellants*

HUBERT H. MARGOLIES, United States Attorney, Washington, D.C., and JAMES A. BOUGH, Attorney, Department of Justice, Charlotte Amalie, Virgin Islands (FRANCIS M. SHEA, Assistant Attorney General, and ARNOLD LEVY, Spec. Assistant to the Attorney General, on the brief), *for appellee*

Before MARTIN and McLAUGHLIN, *Circuit Judges*, and HARRY E. KALODNER, *District Judge*

KALODNER, *District Judge*

This is an appeal from a judgment denying plaintiffs the recovery of five fines totaling $5,000 paid by the West Indian Company, Ltd., to the defendant, the Collector of Customs of the Port of Charlotte Amalie, St. Thomas, Virgin Islands. The fines were imposed by the Attorney General pursuant to Section 20(a) of the Immigration Act of 1924, 43 Stat. 153, 8 U.S.C. § 167(a)█, and the Immigration Rules and Regulations, Title 8, Code of Federal Regulations, Parts 120 and 160 (formerly Parts 7 and 23, respectively), for failure to detain five alien seamen on board the Yugoslav steamship "Kupa" as required by the Immigration and Naturalization Service.

On June 5, 1941, the "Kupa" moored alongside the dock of the plaintiff, the West Indian Company, Ltd., agent of the plaintiff operator, Combined Argosies, Inc. She was

boarded by an Immigration Inspector, who, after examining the crew, issued an order to detain five seamen. The order was served on the Master and also on one E. Vernon Cancryn, the boarding clerk of the plaintiff-agent, who refused to sign the acknowledgment of receipt on the ground that he was instructed not to sign orders to detain on behalf of the plaintiff-agent.

On the following day, June 6th, the detainees landed forcibly and then returned to the vessel. On June 7th, the detainees left the "Kupa" with intent to desert. Thereafter they were apprehended and on June 10th they were tried, found guilty of illegal entry and sentenced to be deported.

The plaintiff-agent was served with notice of liability for the fine of $1,000, as to each of the detainees, and on June 11, 1941, it posted bond to obtain clearance for the "Kupa" which was then permitted to sail.

On July 17, 1941, plaintiff-agent, by letter addressed to the Attorney General, requested that the fines be not imposed on the grounds that the Master had done all he could to keep the detainees on board and that the fine would work a hardship on the economy of the Port of St. Thomas. On March 18, 1943, it received a letter from the defendant informing it that the fines had been imposed on it and requesting immediate payment lest the matter be brought to the attention of the sureties for collection. Plaintiff-agent paid the fine on April 21, 1943, but on May 3, 1943, it requested of the Attorney General remission of the fines on the grounds that the detainees had not escaped, that they were apprehended and deported, and that imposition of the fines would work a hardship on the port. The Attorney General, on May 28, 1943, refused to reopen the matter, and on September 13, 1943, plaintiffs instituted this suit to recover.

The principal complaint of the plaintiff-agent is that

the Trial Court erred in its decision that the detention order of June 5, 1941, was properly served.

 It is true, as the plaintiff-agent contends, that notice to the Master could not operate to charge the Agent with a duty to detain where, as here, there is no showing that the Master was also a representative of the Agent, for such notice creates a personal liability. Compagnie Generale Transatlantique v. Elting (1936) 298 U.S. 217, 56 S. Ct. 770, 80 L. Ed. 1151. There the Supreme Court stated, 298 U.S. at page 224: "A master in charge who is required by the immigration officer to detain alien seamen after examination becomes thereby personally charged with a duty to detain them, and, if he fails therein, becomes personally subject to the prescribed fine. The same thing is true of the owner, charterer, agent, or consignee. But none is charged with a duty so to detain unless he is notified of that requirement, and notice to one does not without more operate as notice to another."

The instant case, however, does not fall exactly within the purview of the quoted case. Here, the order which defendant argues is effective to charge the Agent with responsibility for detaining the seamen is not that handed to the Master, but rather that given to the boarding clerk, the representative of the Agent on board the "Kupa." The boarding clerk is not a party under the statute made liable for violation of the order, and it is evident he was not acting otherwise than as the Agent's representative. He did, however, refuse to acknowledge receipt of the order, and, at the time the order was given, asserted that he had no authority to sign an acceptance for the Agent.

 However, it is not necessary in this case to go so far as to determine that notice to Cancryn constituted notice to his employer, the Agent. No specific method or

means of relating the requirement to detain to the party sought to be charged is set out in the statute, and the Regulation merely requires notice in writing. Immigration Regulations, section 120.35 (formerly Part 7-H-2 or 7.35). It is sufficient, therefore, if the order is "communicated" to the one on whom the duty is to rest, or is "brought to the knowledge of [that party]." Compagnie Generale Transatlantique v. Elting, supra, 298 U.S. at pages 223 and 224; see also United States v. J. H. Winchester & Co., Inc., 2 Cir., 1930, 40 F.2d 472, 473; cf. National Surety Corporation of N. Y. v. United States, 4 Cir., 1939, 104 F.2d 490, 491. The Agent did not deny that it knew about the detention order delivered to Cancryn, its boarding clerk, and directed to it. In fact, the record discloses that the clerk was duty bound to make a report of the order to his superiors, and that he did so.[1] The requirement to detain, therefore, was communicated to the Agent and brought to its knowledge. Cf. Rio Cape Line, Ltd., v. United States (1939) 89 Ct. Cl. 307, 314. Under such circumstances the refusal to acknowledge receipt of the order does not alter the effectiveness of the order. Navigazione Libera Triestina v. United States, 9 Cir., 1929, 36 F.2d 631, 633. We conclude, therefore, that the detention order of June 5, 1941, was effective to require the plaintiff-agent to detain the five seamen listed therein.

[1]Testimony by George Conrad, Office Manager of Agent.

Cross-examination by the United States Attorney:

"Q. . . . at what time, whenever it was, did it come to your knowledge, that there was some difficulty involving the Kupa because of these five men whose names you have just heard. I want to know when did this first come to your attention? A. I don't exactly recall. I suppose after he (meaning Mr. Cancryn) had reported to the office — after he had boarded the ship. The procedure was: a vessel comes in port, the water clerk boards the vessel. If there is anything unusual to be accomplished, it would be reported. . . .

"Q. Did he come back after he boarded the Kupa? A. Yes.

"Q. Did he make any mention to you about the detention order? A. Whether it is a detention order or not he would report to the office, because it is merely a routine matter. . . ."

Plaintiff-agent also contends that the Trial Court erred in holding that the Attorney General made no unfair use of his discretion. The defenses urged before the Attorney General, that the Master of the "Kupa" did all he could to prevent the escape and that imposition of the fines would work a hardship on the port, are patently insufficient, for Section 20(a) of the Immigration Act makes the duty to detain absolute. United States v. J. H. Winchester & Co., Inc., supra, 2 Cir., 40 F.2d at page 473; Lloyd Royal Belge Societe Anonyme v. Elting, 2 Cir., 1932, 61 F.2d 745, 747, certiorari denied 289 U.S. 730, 53 S. Ct. 526, 77 L. Ed. 1479; Deppe v. Lufkin, 1 Cir., 1940, 116 F.2d 483, 485. The assertion that the detainees did not escape because they were apprehended and deported demonstrates its own contrariness. This was no mere technical landing, for, according to the record, the detainees left the "Kupa" with intent to desert and were not apprehended until the following day, when they were imprisoned. The fact that the "Kupa" had not sailed until after the detainees were found does not make it any less an escape and it certainly is no less a failure on the part of the Agent to detain the seamen as required. There was, therefore, no abuse of discretion by the Attorney General in imposing the fines or in refusing to remit them on the grounds stated in the Agent's letters of July 17, 1941, and May 3, 1943.

Further, it is urged that the detention order was illegal because the detainees were bona fide seamen entitled to land and had not been accorded a fair examination to determine their right to do so. The Agent, however, admittedly never raised this issue in the Administrative process, nor did it offer any evidence of this conviction to the Attorney General. The defendant maintains, therefore, that the Trial Court did not err in failing to give consideration to the contention.

The privilege of an alien seaman to land or his obligation to remain aboard ship is determined administratively. Section 20(a) Immigration Act of 1924, 8 U.S.C. § 167(a). Liability for failure to detain is also determined administratively. Lloyd Royal Belge Societe Anonyme v. Elting, 2 Cir., 1932, 61 F.2d 745, 747. Well-settled now is the rule requiring exhaustion of administrative remedies. Cf. Myers v. Bethlehem Shipbuilding Corporation (1938) 303 U.S. 41, 58 S. Ct. 459, 82 L. Ed. 638; Federal Power Commission v. Metropolitan Edison Co (1938) 304 U.S. 375, 58 S. Ct. 963, 82 L. Ed. 1408. Equally well-settled is the principle that the complaining party in an administrative proceeding must raise all judicial questions upon which he intends to rely. General Utilities & Operating Co. v. Helvering (1935) 296 U.S. 200, 56 S. Ct. 185, 80 L. Ed. 154. Clearly, the available administrative remedies are not exhausted with respect to contentions not specifically raised and passed upon. Cf. Natural Gas Pipeline Co. v. Slattery (1937) 302 U.S. 300, 58 S. Ct. 199, 82 L. Ed. 276. The Agent here evidently was fully aware of the administrative remedies; unfortunately, it did not see fit to raise the issue now asserted.

The cry "unfair" comes with ill grace when the fairness of the examination and the propriety of the order could have been inquired into by the administrative agency involved had the agency been given the opportunity to do so and this could have been done in sufficient time to avert imposition of the fines.[2]

 Aside from this determination, we think the Agent's contention unsound. It should be pointed out that the privilege of an alien seaman to land is determined in the first instance by the Immigration Inspector who examines the crew. Lloyd Royal Belge Societe Anonyme

[2]The notice of intention to fine offers a hearing within 60 days. Immigration Regulations. Sec. 160.14 (formerly Part 23-B-2 or 23.14).

v. Elting, supra; British Steam Nav. Co. v. Elting, 2 Cir., 1932, 74 F.2d 204, certiorari denied 1936, 295 U.S. 736, 55 S. Ct. 648, 79 L. Ed. 1684. Manifestly, the object of Congress in passing the legislation pertaining to alien seamen was to eliminate to the greatest degree the possibilities of aliens entering the United States in the guise of seamen. Thus, alien seamen are required to be kept aboard ship until an examination has been made. Section 20(a). They are denied a hearing before a Board of Inquiry, and detention orders may be issued immediately by the examining inspector. Lloyd Royal Belge Societe Anonyme v. Elting, supra; Immigration Regulations of 1930, Section 120.35 (formerly Part 7-H-2 or 7.35). The Immigration Inspector must "proceed with expedition in his examination for the purpose of learning whether a seaman intends to remain one or whether he intends to abandon his calling. He must rely upon impressions which he receives through the examination of the seamen, bringing to his assistance his experience and information that may properly come before him respecting the membership of the crew." British Empire Steam Nav. Co. v. Elting, supra, 74 F.2d at page 206. Furthermore, Section 120.21 of the Immigration Regulations (formerly Part 7-E-5 or 7.21) does not grant rights of entry nor does it prevent detention for other reasons. National Surety Corporation v. United States, 5 Cir., 1941, 143 F.2d 831, 835, certiorari denied 323 U.S. 782, 65 S. Ct. 268, 89 L. Ed. 625.[3] Since

[3] Another basis exists for refusing to enter upon a consideration of the grounds of the detention order. While the Courts have showed no hesitancy to consider whether the party sought to be charged was served with the detention order and whether there was a failure to detain, there appears a reluctance to inquire into the grounds of the order. Indemnity Insurance Co. of North America v. United States, 5 Cir., 1934, 74 F.2d 22, 24; National Surety Corporation v. United States, 5 Cir., 1944, 143 F.2d 831, 835, certiorari denied 323 U.S. 782, 65 S. Ct. 268, 89 L. Ed. 625. On the other hand, it would seem that the fairness of the examination may be inquired into. See Lloyd Sabaudo Societa v. Elting, 1932, 287 U.S. 329, 53 S. Ct. 167, 77 L. Ed, 341; British Steam Nav. Co. v. Elting, supra.

this Court will not substitute its judgment for that of the Immigration Inspector, and in view of the presumption of regularity that adheres to an administrative determination in the absence of a clear showing to the contrary, we cannot say, on the record in this case, that, at the time the detention order issued, the Inspector should have believed that the five seamen involved intended merely to change their berths and not to abandon their calling.

Finally, the defendant raises the technical question, whether the operator, Combined Argosies, Inc., is properly a party-plaintiff. The operator, it may be noted, was not served either with a detention order or a notice of intention to fine. No attempt was made to collect the fines from the operator, and it did not pay the fines. Prior to the commencement of this action, it made no claim on the Department of Justice for remission of the fines, nor did it participate in any administrative proceeding. Whatever right plaintiff-agent may have against its principal to recover the fines paid is not in issue here. Since the operator could not have been held liable for the escape here, and it did not pay the fines, it has no right to relief jointly, alternately or severally with the plaintiff-agent. It is therefore without standing as a party-plaintiff and should have been dropped under Rule 21 of the Federal Rules of Civil Procedure, 28 U.S.C., following section 2072.

For the reasons stated, we are of the opinion that the learned Trial Judge properly denied recovery of the fines.

The judgment of the District Court is affirmed.