**UNITED STATES v. AMERICAN PRESIDENT LINES, Limited.**

Cr. No. 41674.

United States District Court
E. D. New York.

Jan. 22, 1951.

372

Atty., Brooklyn, N. Y., of counsel), for U. S.

Dow & Symmers, New York City (Edwin K. Reid, New York City, of counsel), for defendant.

BYERS, District Judge..

This is a motion—presumably under Rule 12, Fed.Rules Civ.Proc. 28 U.S.C.A.—to dismiss an information which charges a violation of the Statute covering the unauthorized landing of aliens, Title 8 U.S. C.A. § 146(a), in the case of a stowaway who escaped from the S.S. Edward P. Ripley on June 15, 1946.

The information was filed nearly 20 months later, on February 5, 1948, and this motion was heard on January 15, 1951, or about 4½ years after the occurrence.

Those who complain of the law's delay are not without supporting data.

The defendant was either an agent or a sub-agent under a General Agency Agreement made with the War Shipping Administration; the Government being the owner of the ship, her Master was its agent and employee according to the terms of that contract, and he engaged the officers and crew. This is a circumstance which may explain the apparent diffidence of one department of the Government in seeking to visit this alleged violation of law upon the agent of another, in view of the ultimate burden which may have to be borne as the result of asserting a cause which was intended to affect the conduct of private enterprise.

The material provisions of the Statute involved are: "(a) It shall be the duty of every person, including owners, masters, officers, and agents of vessels of transportation lines * * * bringing an alien to * * * the United States, to prevent the landing of such alien in the United States at any time or place other than as designated by the immigration officers. Any such person * * * or agent who fails to comply with the foregoing requirements shall be guilty of a misdemeanor and on conviction thereof shall be punished * * *." (Fine $200.00 to $1,000.00 or imprisonment not to exceed one year.)

Frank J. Parker, U. S. Atty., Brooklyn, N. Y. (Edward S. Szukelewicz, Asst. U. S.

The defendant urges (a) that it is not an agent within the purview of this statute; and (b) that, if it is, reimbursement must be made to it by the United States for any fine which may be herein imposed, pursuant to the terms of the Agency Agreement, hence the Government is engaged in the task of levying a fine against itself.

■ As to the first contention, little is required to be written. The fact that defendant was a shoreside husband-man, Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, does not prove that under appropriate circumstances it could not be held to have incurred the penalty prescribed in the statute. That would depend upon the proof.

For instance, even an agent having so closely circumscribed a function conceivably could be in a position to prevent the landing of an alien by detaining him physically while entering a pier rented and occupied by it, at which the carrying vessel might be berthed. It is unnecessary to point out more than the possibility that the statutory offense *could* be brought home to such an agent as the defendant, depending upon the evidence adduced in a given case.

It is not so clear, however, that the owner or agent of this ship was "bringing an alien to, or providing a means for an alien to come to, the United States * * *", the alien being a stowaway whose presence aboard the ship was not caused by the permission of any one described in the statute, according to the affidavit upon which this motion was based, which is not controverted. See Taylor v. United States, 207 U.S. 120, at page 126, 28 S.Ct. 53, 52 L.Ed. 130; The Habana, 2 Cir., 63 F.2d 812, distinguishing The Nanking, 9 Cir., 290 F. 769 cited by the Government.

The Taylor Case, supra, was examined in Osaka Shosen Kaisha Line v. U. S., 300 U.S. 98, 57 S.Ct. 356, 81 L.Ed. 532, and as restricted to alien members of the crew, was approved. It was distinguished as to a passenger.

The statutory history is referred to in The Habana, supra, opinion, which should be consulted, and likewise a comment appearing in The Presidente Wilson, 2 Cir.,

56 F.2d 742, at page 744, which dealt with the duty of the Court in a proceeding in rem based upon subdivision (b) of the same statute.

■ It must be apparent that in a criminal prosecution, something more must be shown and by the requisite margin of proof, than that a defendant was an agent of the owner of a ship. There is nothing criminal in that status.

■ The requisite showing by the prosecution in such a case would comprehend, I should suppose: (1) knowledge by the agent of the presence of the alien on the ship, (2) means available to the agent to prevent his landing, and (3) failure by the agent to employ those means.

Perhaps the second of these is debatable, but I fail to understand how a person can be convicted of this crime, unless it be made to appear that he exercised the option to refrain from doing that which he was in a position to do, and thus defeated the purpose of the statute.

Search has not revealed any case, nor has one been cited in either brief, in which an agent has been successfully prosecuted for violation of this law.

The alien seamen statute, Title 8 U.S. C.A. § 167, dealing with a failure to detain until (and sometimes after) inspection, on the part of an owner, charterer, agent, consignee or master, and the imposition of a fine of $1,000.00 has been involved in several agent cases: United States v. J. H. Winchester & Co., Inc., 2 Cir., 40 F.2d 472, approved in Compagnie Generale Transatlantiqne v. Elting, 298 U.S. 217 at page 224, 56 S.Ct. 770, 80 L.Ed. 1151; West Indian Co. v. Root, 3 Cir., 151 F.2d 493; United States v. Columbus Marine Corporation, 2 Cir., 62 F.2d 795; Lancashire Shipping Co., v. Elting, 2 Cir., 70 F.2d 699; United States v. Arnold Bernstein S. S. Line, D.C., 44 F.Supp. 19. In all but the last, it appeared that no notice to detain was served upon the agent, and fines based upon notice served only upon the Master were held to have been improperly imposed.

■ These statutes are in pari materia and thus invite uniformity of construction, with respect to the effect of notice to a

Master in the one case, and knowledge by him of the presence of a stowaway in the other.

The Government's brief asserts that under this statute the defendant along with the Master and others "in effect was an insurer against the escape of such an alien", citing Osaka Shosen Line v. United States, supra. That was not a criminal prosecution under § 146(a), but a libel under subdivision b; nor is the expression quoted to be found in the opinion.

The subject has been discussed at perhaps too great length in order to make clear the views presently held with reference to the necessary showing by the prosecution in a criminal case arising under this section.

■ It may be proper to add that the recital in the moving affidavit that the defendant procured "for the account of the United States two guards to watch over the prisoners. These guards were instructed and assigned to their duties aboard the vessel by the Master and were at all times under his control and supervision and not under the defendant's" does not necessarily indicate any assumption of responsibility by the agent on its own behalf. That showing is consistent with an attempt only to enable the Master to discharge his own duties.

Turning now to the second branch of the defendant's argument to which resort may be had in the event that a jury should go so far as to convict this defendant, it becomes necessary to consider whether, if a fine be levied (since the corporation cannot be sent to jail), the Government would be under contractual duty to reimburse the agent therefor:

Article 8 of the contract contains the following cited by defendant (46 C.F.R.Cum. Supp., § 306.44): "The United States shall, without cost or expense to the General Agent, procure or provide insurance against all insurable risks of whatsoever nature or kind relating to the vessels assigned hereunder (which insurance shall include the General Agent and the vessel personnel as assureds) including, but without limitation, marine, war and P. & I. risks, and all other risks or liabilities for breach of statute and for damage caused to other vessels, persons or property, and shall defend, indemnify and save harmless the General Agent against and from any and all loss, liability, damage and expense (including costs of court and reasonable attorneys' fees) on account of such risks and liabilities, to the extent not covered or not fully covered by insurance."

In this connection, the Government also cites Art. 16(b), reading: "(b) In view of the extraordinary wartime conditions under which vessels will be operated hereunder, the General Agent shall be under no responsibility or liability to the United States for loss or damage to the vessels arising out of any error of judgment or any negligence on the part of any of the General Agent's officers, agents, employees, or otherwise. However, the General Agent may be held liable for loss or damage not covered by insurance or assumed by the United States as required under Article 8 of this Agreement, if such loss or damage is directly and primarily caused by willful misconduct of principal supervisory shoreside personnel or by gross negligence of the General Agent in the procurement of licensed officers or in the selection of principal supervisory shoreside personnel."

Since the question of the applicability of the section first above quoted would properly require adjudication in a civil suit between the parties to the contract, it is obvious that anything which this Court may say on the subject would be addressed only to the arguments of the parties to this motion and for the purpose of attempting a proper disposition thereof. The views would be tentative and strictly confined to the necessities of this decision, which is based only upon the recitals in the motion papers. The facts as so portrayed might not be in accord with the evidence if developed upon a trial.

The quoted provisions of Article 8 would seem to sustain the position of the defendant in the event that liability should attach to it for not having prevented the landing of this stowaway.

The reliance of the Government upon the proposition stated in its brief, that "violations of penal provisions of law are not in-

surable risks because such contracts would necessarily be contrary to public policy", citing Fidelity & Deposit Co. v. Moore, D. C., 3 F.2d 652, and Herman v. Mutual Life Ins. Co. of New York, 3 Cir., 108 F.2d 678, does not destroy the defendant's argument. In both of these cases, the decision was against the contention that the insurance contracts were void for illegality.

It does not here appear that the defendant asserts that the Government must be held to have undertaken to insure the defendant against, or reimburse it for, a deliberate and intentional infraction of the law.

That which the United States seeks to establish through this information is that the defendant, and incidentally the Master of the ship who was the agent and employee of the United States, failed to perform a statutory duty. It is clear that, if the Master (i. e. the United States) had not permitted the stowaway to land, no occasion would have arisen for putting to the legal test this agent's alleged independent culpability for that episode to which the United States itself made the major and effective contribution.

If the matter were here presented in such guise as to require adjudication, I should encounter no difficulty in deciding that the undertaking above quoted from Article 8 of the contract should be given effect either as to the procurement of insurance, or the duty to indemnify the defendant against the results of the failure of the Master of his ship to perform the statutory duty here involved; and that no escape from that result was contracted for in Article 16(b), also quoted, in that there is here present no showing of "willful misconduct of principal supervisory shoreside personnel".

For technical reasons which it has been the effort to state with an approach to clarity, it seems that this motion to dismiss must be denied. The entire subject, however, of the fairness and wisdom of pressing this cause to trial, I venture to say, is worthy of re-examination by the Department of Justice.

Settle order.